# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLUMBIA

_____

| | |
|---|---|
| CLARK FRENCH ) | |
| 11374 Bishops Gate Lane ) | |
| Laurel, Maryland  20723 ) | |
| ) | |
| and ) | |
| ) | |
| COMPUTER INTELLIGENCE ) | |
| ASSOCIATES, INC. D.C. ) | |
| 601 Pennsylvania Avenue, N.W. ) | |
| Suite 900S ) | |
| Washington, D.C.  20005 ) | |
| ) | Case Number 1:05CV02448 |
| Plaintiffs, ) | Judge:  Ricardo M. Urbina |
| ) | |
| v. ) | |
| ) | |
| ROY KIME ) | |
| 420 7th Street, N.W., Apartment 924 ) | |
| Washington, D.C.  20004, ) | |
| ) | |
| Defendant. ) | |
| and ) | |
| ) | |
| ROY KIME, ) | |
| 420 7th Street, N.W., Apartment 924 ) | |
| Washington, D.C.  20004, ) | |
| ) | |
| ) | |
| Counterclaim Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| CLARK D. FRENCH ) | |
| 11374 Bishops Gate Lane ) | |
| Laurel, Maryland  20723 ) | |
| ) | |
| and ) | |
| ) | |

MARY E. FRENCH                          )
11374 Bishops Gate Lane                 )
Laurel, Maryland  20723                 )
                                        )
and                                     )
                                        )
COMPUTER INTELLIGENCE                   )
ASSOCIATES, INC. MD.                    )
A Maryland Corporation,                 )
8840 Stanford Boulevard, Suite 4300,    )
Columbia, Maryland 21045                )
Serve: Clark D. French, President       )
11374 Bishops Gate Lane                 )
Laurel, Maryland  20723                 )
                                        )
and                                     )
                                        )
COMPUTER INTELLIGENCE                   )
ASSOCIATES, INC. D.C.                   )
601 Pennsylvania Avenue, N.W.           )
Suite 900S                              )
Washington, D.C.  20005,                )
                                        )
                 Counterclaim Defendants. )
                                        )
_____)


# **ANSWER AND COUNTERCLAIM**

## **ANSWER**

1.      Defendant admits the allegation contained in paragraph 1 of the Complaint on

information and belief.

2.      Defendant admits the allegation contained in paragraph 2 of the Complaint on

information and belief.

3.      Defendant admits that he is a resident and citizen of the State of New York and

that he is a resident of the District of Columbia.  Defendant denies that it is he who

maintains a residence at 420 7th Street, N.W., Apartment 924, Washington, D.C. 20004,

to the extent that this implies any agreement or understanding that Defendant was responsible for paying the rent for this apartment during his employment with CIA-DC because, by agreement with Clark D. French, CIA-DC paid the rent on the apartment as a business expense. Defendant denies that he maintained a principal place of business at 601 Pennsylvania Avenue, N.W., Suite 900S, Washington, D.C. 20005, in that CIA-DC, the corporation of which he was one-half owner maintained a place of business at that location. Defendant denies all other allegations contained in paragraph 3 of the Complaint.

4.      Defendant admits that this court has jurisdiction under 28 U.S.C. § 1332 because there is complete diversity between the parties and that the amount in controversy exceeds $75,000. Defendant admits that venue is proper in the District of Columbia pursuant to 28 U.S.C. § 1391, but denies that any of the alleged events or omissions underlying Plaintiffs' complaint entitle Plaintiffs to relief.

5.      Defendant denies that he failed and refused to offer his shares first to the corporation and then to Plaintiff Clark D. French, that French stands ready, willing and able to pay the agreed-upon consideration for his shares, or that an enforceable agreement regarding the repurchase of his shares currently exists. Rather, the corporation unilaterally offered to purchase Defendant's shares at a price that was not agreed-upon by both Plaintiff French and Defendant Kime as required by the Restrictive Stock Transfer Agreement and did not reflect the fair value of the shares. When Defendant turned down this offer and proposed that Plaintiff French agree upon an appraisal to determine the fair value of his stock, the corporation's Board of Directors, Plaintiff Clark D. French and his wife, Mary E. French, passed a resolution that the corporation would not purchase

Defendant's shares.  On his own behalf, Clark D. French also unilaterally offered to purchase Defendant's shares, at a price that dropped even lower than the price last offered by the corporation, which was not mutually agreed-upon by French and Kime as required by the Restrictive Stock Transfer Agreement and did not reflect the fair value of the stock.  French has also refused to consent to an appraisal for the purpose of reaching an agreement regarding the fair value of the stock.  Defendant Kime further denies that he has breached any agreement regarding his reimbursable expenses, that he has breached any fiduciary duty regarding his expenses, or that he has made any "false representations" regarding his expenses or committed any impropriety regarding the same.  Defendant denies all other allegations contained in paragraph 5 of the Complaint.

6.      Defendant admits the allegations contained in paragraph 6 of the Complaint on information and belief.

7.      Defendant admits the allegations contained in paragraph 7 of the Complaint.

8.      Defendant admits the allegations contained in paragraph 8 of the Complaint on information and belief.

9.      Defendant admits the he discussed with French the sales contacts, expertise and experience he could contribute to a corporation formed and located in the District of Columbia.  Defendant denies all other allegations contained in paragraph 9 of the Complaint.

10.     Defendant denies that he was offered employment by the corporation, which he accepted, based on his representations regarding business opportunities and developing a client base and the implication that he was offered a chance to invest in the corporation as an incident of that employment.  Rather, it was understood from the beginning of

Defendant's discussions with Plaintiff French that Defendant would participate in the corporation as a founder and one-half owner. To this end, Defendant paid $1,000 for 100 shares of no par value common stock in the corporation, which sum constituted one-half of the paid in capital required by the corporation's Articles of Incorporation before the corporation could begin doing business. As part of their initial discussions, Plaintiff French also proposed that Defendant have the title of Chief Executive Officer. Initially, Defendant received a draw rather than a salary. He later received part of his distribution from the corporation as W-2 wages, primarily for tax purposes. To the extent Defendant was an "at-will" employee of the corporation, this was incident to his status as one-half owner. In further answer to paragraph 10 of the Complaint, Defendant incorporates by reference as if fully set forth herein his answer to paragraph 9 of the Complaint. Defendant denies all other allegations contained in paragraph 10 of the Complaint not expressly admitted herein.

11.    Defendant admits the allegation contained in paragraph 11 of the Complaint in part on personal knowledge and in part on information and belief.

12.    Defendant admits the allegation contained in paragraph 12 of the Complaint.

13.    Defendant admits that, throughout the period that he participated in the business of the corporation as one-half owner and Chief Executive Officer, he received profit distributions from the corporation and that he was reimbursed for expenses that he submitted to, and were approved by, Plaintiff French. Defendant denies all other allegations contained in paragraph 13 of the Complaint.

14.    Defendant denies that there was any agreement, express or implied, that he would refrain from doing anything that would cause his termination from the corporation.

Defendant further denies that there was an "Advance Agreement" governing the terms under which he received "advances" on profit distributions or providing that, if the corporation terminated Defendant, he would be required to repay any advances. Rather, as a fifty percent owner of the corporation, Defendant received monthly profit distributions from the corporation in the amount of $5,000, and in November 2005, in the amount of $7,500, as approved by Plaintiff French. French also paid himself profit distributions from the corporation. Defendant was entitled to whatever distributions he received at the time they were made and there was no understanding or agreement that they must be repaid. Defendant further denies that he has any obligation to repay any distributions from the corporation on account of his termination because Defendant French engineered and contrived his termination in bad faith for the purpose of forcing him out of the corporation and denying him the fair value of his investment. Defendant denies all other allegations contained in paragraph 14 of the Complaint.

15.     Defendant admits that he had a corporate credit card from Capital One that he used for business expenses, that he also charged business expenses on his personal American Express card for which he sometimes requested reimbursement, and that he used a car service that billed the corporation directly. Defendant denies that there was a bright line between charges he incurred for business expenses as an "employee" and charges that constituted a form of profit distribution to him as a one-half owner of the corporation. On information and belief, Plaintiff Clark D. French also reimbursed himself for both business and personal expenses. Defendant denies all other allegations contained in paragraph 15 of the Complaint.

16.     Defendant admits that he was aware that CIA-DC had promulgated a policy for employees regarding expenses in or about January 2004, but denies that he was an "employee" within the meaning of the policy or that CIA-DC took any action indicating that the policy applied to him.  Rather, he was one-half owner of the corporation who was subject to a different practice and understanding with regard to expenses.  In addition, to the extent Plaintiffs assert that said policy applied to Defendant, the President of the corporation, Clark D. French, did approve all of Defendant's expenses.  Defendant denies all other allegations contained in paragraph 16 of the Complaint.

17.     Defendant denies that he was reimbursed for every expense he submitted and that Clark D. French did not review his expenses.  To the contrary, French asked Plaintiff to resubmit a request for reimbursement that contained expenses that French did not approve.  On information and belief, French did review each and every expense Defendant submitted because French's approval was the basis on which the expenses were processed for payment.  Defendant disclosed the nature of each and every expense and had no reason to believe that expenses for which he was, in fact, reimbursed were not proper.  Defendant denies all other allegations contained in paragraph 17 of the Complaint.

18.     Defendant denies the allegations contained in paragraph 18 of the Complaint.  By way of further answer, Defendant incorporates by reference as if fully set forth herein his answers to paragraphs 16 and 17 of the Complaint.

19.     Defendant denies that, upon review of his 2005 expenses, the corporation "discovered" any improprieties.  Rather, all of these expenses were fully disclosed and approved by Plaintiff Clark D. French.  Plaintiff further alleges that Clark D. French is

only now reviewing Defendant's expense reports and claiming improprieties in bad faith

for the purpose of coercing Defendant into relinquishing his rights under the Restrictive

Stock Transfer Agreement and forcing Defendant to sell his one-half interest in the

corporation to French at well below its fair value.  Defendant denies all other allegations

contained in paragraph 19 of the Complaint.

20.     Defendant admits that the corporation paid the rent for an apartment at 420 7th

Street, N.W., Apartment 924, Washington, D.C. 20004, directly to the landlord but denies

that this arrangement was for his personal convenience or that he understood that he was

responsible for reimbursing the corporation for the rent.  To the contrary, Defendant had

an understanding with Clark D. French that the corporation would pay the rent on the

apartment as a business expense.  Defendant denies all other allegations contained in

paragraph 20 of the Complaint.

21.     Defendant denies that he was terminated by letter dated November 6, 2005,

because he was told that he was terminated by Clark D. French on November 7, 2005, in

a face-to-face discussion in which French also gave him a letter dated November 6, 2005,

notifying him of his termination.  Defendant denies all other allegations contained in

paragraph 21 of the Complaint.

22.     Defendant admits the allegations contained in paragraph 22 of the Complaint.

23.     Defendant admits the allegations contained in paragraph 23 of the Complaint.

24.     Defendant admits the allegations contained in paragraph 24 of the Complaint.

25.     Defendant denies the allegations contained in paragraph 25 of the Complaint.

Defendant further alleges that Plaintiffs' position that the requirement in the Restrictive

Stock Transfer Agreement that the "Stockholders" agree upon the value of the shares is

satisfied by a Resolution of the *Board of Directors* fixing the initial subscription price to be paid *by* the Stockholders for the shares is knowingly frivolous and asserted in bad faith for the purpose of depriving Defendant of his rights under the Restrictive Stock Transfer Agreement and coercing him into selling his shares to Plaintiff Clark D. French at well below their fair value.

26.    Defendant denies the allegations contained in paragraph 26 of the Complaint.  By way of further answer, Defendant incorporates by reference as if fully set forth herein his answer to paragraph 5 of the Complaint.

27.    Defendant has no personal knowledge of a Board of Directors resolution passed in December 2005, stating that it is not in the corporations' interest to repurchase his shares, but admits that Clark D. French has acted consistently with such a resolution and has it within his power to cause the Board to pass such a resolution since he and his wife are the only directors.  Therefore, Defendant admits the allegations contained in paragraph 27 of the Complaint on information and belief, except that he denies that the resolution represents the disinterested business judgment of the Board regarding the best interest of the corporation and asserts, rather, that the Board resolution was passed in bad faith for the purpose of furthering Clark D. French's personal interest in obtaining Defendant's one-half ownership in the corporation for himself at a price well below its fair market value.  Defendant denies all other allegations contained in paragraph 27 of the Complaint.

28.    Defendant admits that Plaintiff Clark D. French demanded that Plaintiff sell his stock in the corporation to French, but denies that this demand was pursuant to the Restrictive Stock Transfer Agreement because it was based on French's unilateral determination of a price that was well below the fair value of the stock and was intended

to deprive Defendant of his rights under the Agreement.  Defendant denies all other allegations contained in paragraph 28 of the Complaint.

29.    Defendant admits that the Restrictive Stock Transfer Agreement contains the language regarding specific enforcement quoted in paragraph 29 of the Complaint but denies that he has breached the Agreement because he cannot render performance under it unless and until both he and French arrive at an "Agreed Value" for the shares as required by Sections 6 and 8 of the Agreement, or this Court imposes upon the Stockholders a fair and impartial method for valuating Defendant's stock.

## COUNT I
### (Breach of Contract) (Asserted by CIA-D.C.)

30.    Defendant incorporates by reference as if fully set forth herein its answers to paragraphs 1 through 29 of the Complaint.

31.    Defendant denies the allegations contained in paragraph 31 of the Complaint.

32.    Defendant denies the allegations contained in paragraph 32 of the Complaint.  By way of further answer, Defendant incorporates by reference as of fully set forth herein his answers to paragraphs 5 and 14 through 20 of the Complaint.

33.    Defendant denies the allegations contained in paragraph 33 of the Complaint.  By way of further answer, Defendant incorporates by reference as of fully set forth herein his answers to paragraphs 5 and 14 through 20 of the Complaint.

34.    Defendant denies the allegations contained in paragraph 34 of the Complaint.  By way of further answer, Defendant incorporates by reference as of fully set forth herein his answers to paragraphs 5 and 14 through 20 of the Complaint.

35.    Defendant denies the allegations contained in paragraph 35 of the Complaint.  By way of further answer, Defendant incorporates by reference as of fully set forth herein his answers to paragraphs 5 and 14 through 20 of the Complaint.

36.    Defendant denies the allegations contained in paragraph 36 of the Complaint.  By way of further answer, Defendant incorporates by reference as of fully set forth herein his answers to paragraphs 5 and 20 of the Complaint.

37.    Defendant admits the allegations contained in paragraph 37 on information and belief.  By way of further answer, Defendant incorporates by reference as of fully set forth herein his answers to paragraphs 5 and 20 of the Complaint.

38.    Defendant denies the allegations contained in paragraph 38 of the Complaint.  By way of further answer, Defendant incorporates by reference as of fully set forth herein his answers to paragraphs 5 and 20 of the Complaint.

39.    Defendant denies the allegations contained in paragraph 39 of the Complaint.  By way of further answer, Defendant incorporates by reference as of fully set forth herein his answers to paragraphs 5 and 20 of the Complaint.

COUNT II
(Breach of Fiduciary Duty) (Asserted by CIA-D.C.)

40.    Defendant incorporates by reference as if fully set forth herein its answers to paragraphs 1 through 39 of the Complaint.

41.    Defendant denies that he had a fiduciary duty arising from his ability to charge business expenses to the corporation.  To the extent Defendant has a fiduciary duty arising from his position as a fifty percent shareholder of the corporation and its Chief

Executive Officer, Defendant denies that he violated that duty.  Defendant denies all other allegations contained in paragraph 41 of the Complaint.

42.     Defendant denies the allegations contained in paragraph 42 of the Complaint. Defendant denies that he ever misrepresented the character of any expense or that he submitted any expense that he knew was not subject to reimbursement.  By way of further answer, Defendant incorporates by reference as of fully set forth herein his answers to paragraphs 5 and 14 through 20 of the Complaint.

43.     Defendant denies the allegations contained in paragraph 43 of the Complaint.

44.     Defendant denies the allegations contained in paragraph 44 of the Complaint.

45.     Defendant denies the allegations contained in paragraph 45 of the Complaint.

COUNT III
(Specific Performance)

46.     Defendant incorporates by reference as if fully set forth herein its answers to paragraphs 1 through 45 of the Complaint.

47.     Defendant admits that the Restrictive Stock Transfer Agreement is a valid contract but denies that it may be enforced to require Defendant to sell his shares in the corporation to Plaintiff French for $600, as Plaintiffs seek in this action, because the Plaintiffs have refused to comply with the provisions in the Agreement regarding the fair valuation of Defendant's stock and are, instead, attempting to force him to sell for a grossly inadequate price they have fixed unilaterally.  By way of further answer, Defendant incorporates by reference as of fully set forth herein his answers to paragraphs 5, 25, 28 and 29 of the Complaint.  Defendant denies all other allegations contained in paragraph 47 of the Complaint.

48.    Defendant denies the allegations contained in paragraph 48 of the Complaint.  By way of further answer, Defendant incorporates by reference as of fully set forth herein his answers to paragraphs 5, 25, 28 and 29 of the Complaint.

49.    Defendant admits that Plaintiff Clark D. French is attempting to force Defendant to sell his fifty percent ownership interest in the corporation to French for a total price of $600.  Defendant denies that French has complied with the Restrictive Stock Transfer Agreement in fixing this price.  Defendant further denies that French's unilateral demand that Defendant sell for $600 triggers Defendant's obligations under the Restrictive Stock Transfer Agreement.  Defendant denies all other allegations contained in paragraph 49 of the Complaint.  By way of further answer, Defendant incorporates by reference as if fully set forth herein his answers to paragraphs 5, 25, 28 and 29 of the Complaint.

50.    Defendant denies the allegations contained in paragraph 50 of the Complaint because Defendant has no obligation to tender his shares to Plaintiff French on the terms offered.  By way of further answer, Defendant incorporates by reference as of fully set forth herein his answers to paragraphs 5, 25, 28 and 29 of the Complaint.  Defendant denies all other allegations contained in paragraph 50 of the Complaint.

51.    Defendant admits that, due to the absence of a market for the corporation's shares, protection for his investment is assured only by good faith adherence to the Restrictive Stock Transfer Agreement.  Defendant denies the remaining allegation in paragraph 51 of the Complaint because Defendant has not breached the Restrictive Stock Transfer Agreement with respect to Plaintiffs.  Rather, Plaintiffs have breached the Agreement with respect to Defendant.

## DEFENSES

1.      Plaintiffs fail to state any claim upon which relief can be granted.

2.      Plaintiffs have failed to allege fraud with particularity.

3.      Plaintiffs own misconduct has caused their alleged injuries.

4.      Plaintiffs are estopped from alleging that acts they approved are unlawful.

5.      Plaintiffs have engineered and contrived the circumstances underlying their Complaint in furtherance of a fraudulent scheme to deprive Defendant of the value of his investment in Plaintiff CIA-DC for the personal benefit of Plaintiff Clark D. French and his wife, Mary E. French.

WHERFORE, Plaintiffs are not entitled to specific performance or any other relief and their Complaint should be dismissed in its entirety with prejudice.

## COUNTERCLAIM

1.      This Court has jurisdiction under 28 U.S.C. § 1332 over this Counterclaim because there is complete diversity between the parties and that the amount in controversy exceeds $75,000.   Venue is proper in the District of Columbia pursuant to 28 U.S.C. § 1391.  Joinder of Counterclaim Defendants Mary E. French and CIA-MD is proper pursuant to Fed.R.Civ.P. 13(h).

2.      Counterclaim Plaintiff Roy Kime is a citizen of the State of New York and a resident of the District of Columbia.  He is also a fifty percent shareholder of Plaintiff Computer Intelligence Associates, Inc. ("CIA-DC").

3.      Counterclaim Defendant Computer Intelligence Associates, Inc., ("CIA-MD"), is a corporation organized under the laws of the State of Maryland with its principal place of business at 8840 Stanford Boulevard, Suite 4300, Columbia, Maryland 21045.

4.      Counterclaim Defendant Clark D. French is an individual citizen of the State of Maryland and currently resides at 11374 Bishop Gate Lane, Laurel, Maryland 20723.

5.      Counterclaim Defendant Mary E. French is an individual citizen of the State of Maryland and currently resides at 11374 Bishop Gate Lane, Laurel, Maryland 20723.

6.      Clark D. French is the sole shareholder of CIA-MD, and Mary E. French is the beneficial owner of Clark D. French's shares in CIA-MD.  Clark D. French and Mary E. French are the only directors of CIA-MD.  Clark D. French and Mary E. French are also the only officers of CIA-MD.

7.      The Articles of Incorporation for CIA-DC were filed on February 7, 2003. The purposes for which CIA was organized are:

> To engage in the development of software for computers accessible to disabled persons, to consult with various businesses and corporations regarding software development, and to represent businesses and corporations in an effort to avoid computer espionage and to engage in any other lawful purpose or business.

8.      Since CIA-DC's incorporation, its Board of Directors has consisted of two directors:  Clark D. French, and his wife, Mary E. French.

9.      In February 2003, Clark D. French and Mary E. French adopted the CIA-DC By-laws and elected Clark D. French President and Treasurer of CIA and Mary E. French Secretary of CIA.

10.     Pursuant to a Subscription Agreement dated February 2003, Clark D. French purchased 100 shares of CIA common stock without par value for $1000, or the equivalent of $10 per share.

11.     Pursuant to a Subscription Agreement dated March 2003, Counterclaim Plaintiff Roy Kime purchased 100 shares of CIA common stock without par value for $1000, or the equivalent of $10 per share.  As part of the Subscription Agreement, Kime agreed to enter into a Restrictive Stock Transfer Agreement.

12.     The CIA Board of Directors set the price of $10 per share for the stock purchased by Clark D. French and Roy Kime in a resolution authorizing the issuance of 100 shares of CIA common stock to each of them dated February 27, 2003.

13.     Roy Kime and Clark D. French, as CIA "Stockholders," entered into a Restrictive Stock Transfer Agreement with CIA dated February 27, 2003.

14.     The Restricted Stock Agreement provides, *inter alia*:

> D.     The corporation recognizes that the loss of the services of any Stockholder would constitute a serious impairment to the effective conduct of its business and also might appreciably reduce the value of its goodwill.

> E.     The parties to this Agreement believe that its execution will serve as an inducement to the Stockholders to remain in the employ of the Corporation.

15.     Section 6 of the Restrictive Stock Agreement also provides, *inter alia*, that, immediately upon the cessation of employment with the Corporation of any Stockholder for any reason whatsoever except death, retirement or disability, the Departing

Stockholder shall offer all of his shares first, to the Corporation, and second, to the other Stockholders, at a Departing Purchase Price per share that "shall be Sixty Percent (60%) of the Agreed Value of the Shares, as defined in Subsection 8."

16.     Subsection 8 of the Restrictive Stock Agreement provides that:

> "Agreed Value" as used in this Agreement shall be the per share dollar amount last agreed upon in writing by all of the Stockholders, which agreement shall be dated and filed with the minute book of the Corporation, and shall be in the form set forth in Schedule A which is attached hereto and incorporated by reference herein.

17.     Section 14 of the Restrictive Stock Agreement provides that "Each of the parties hereto agrees to take or cause to be taken further actions, to execute and deliver or cause to be executed and delivered such further instruments and to use his best efforts to obtain such requisite consents as any other party may from time to time reasonably request in order to fully effectuate the purposes, terms and conditions of this Agreement."

18.     The Restrictive Stock Agreement was executed by Roy Kime and Clark D. French as Stockholders of 100 shares of CIA-DC each, and by Clark D. French as President of CIA-DC.

19.     No "Schedule A" to the Restrictive Stock Agreement exists.

20.     To date, no agreement regarding the value of CIA-DC stock has been reached between the CIA-DC Stockholders, Clark D. French and Roy Kime, as contemplated by Subsection 8 of the Restrictive Stock Agreement.  Neither Roy Kime nor Clark D. French was a Stockholder when the initial purchase price of their shares was determined.

21.    CIA-DC was incorporated initially for the purpose of qualifying for the set-asides and preferences in the District of Columbia contract procurement process for Local, Small and Disadvantaged Business Enterprises.

22.    Clark D. French and Roy Kime agreed that Kime would perform services for CIA-DC consisting of front-end business development and recruitment.  French told Kime that Kime would have the title of Chief Executive Officer.

23.    Initially, Roy Kime and Clark D. French received only profit disbursements from the corporation and the corporation issued each of them an IRS Schedule K-1.  In 2004, French and Kime began taking part of their draw ($40,000) in the form of salary and the corporation issued them IRS Form W-2's for this amount.  For 2005, French and Kime agreed to pay themselves $180,000 in the form of W-2 wages.  Kime received $90,000 in $7,500 increments paid in March, April, May, June, July, August and September 2005. In addition, French and Kime agreed that Kime would receive profit distributions in 2005 in the amount of $5,000 per month.  However, because, according to French, cash flow was tight, both Kime and French agreed to defer wage payments and forego profit distributions in September and November 2005, except that Kime and French both received a non-W-2 profit distribution of $7,500 on November 1, 2005.  Kime received profit distributions for the year 2005 totaling $52,500.  On information and belief, French paid himself profit distributions for the year 2005 totaling $90,000.

24.    In addition, Kime submitted requests to CIA-DC for various expenses, which were approved by CIA-DC's President, Clark D. French.  On information and belief, French also caused CIA-DC to reimburse him for expenses.

25.     There is no written agreement limiting Kime's entitlement to share in the profits of CIA-DC.  The timing and amount of profit disbursements were agreed to on an informal basis between Kime and French.

26.     Maintaining a "Resident Business Owner" in the District of Columbia entitles CIA-DC to competitive preference points in the competitive solicitation process for District of Columbia contracts.  Kime was able to maintain residence in his father's apartment in the District of Columbia beginning in 2003 until his father moved in 2004. In January 2005, Kime rented an apartment in the District of Columbia.  Clark D. French informed Kime that CIA-DC would pay the rent for the apartment as a business expense. There was no agreement that Kime would be personally liable for the rent.

27.     On November 7, 2005, Clark D. French announced to Kime that Kime's employment with CIA-DC was terminated.  French handed Kime a letter November 6, 2005, signed by Clark as President of CIA, stating that "effective immediately, I am terminating your employment with Computer Intelligence Associates of D.C.  I have enjoyed working with you and wish you well in your future efforts."

28.     In the same discussion, French tendered an offer to Kime of $150,000 for his stock, but told Kime that the offer would go down if Kime consulted an attorney.

29.     Kime asked French why he was being terminated.  French replied that the company was not performing the way he wanted it to but did not give any specific reason for terminating Kime.

30.     At the time of Kime's termination, revenues of CIA-DC were not down and CIA-DC had ongoing contracts for which Kime was responsible.  Clark D. French proposed

that Kime enter into an arrangement with CIA-DC whereby he continued to service those contracts.

31.     Clark D. French, as President of CIA-DC, and Mary D. French, as Secretary of CIA-DC, signed a memorandum dated November 7, 2005, stating:  "All of the Board of Directors for Computer Intelligence Associates, Inc [sic] of the District of Columbia have met and agreed that the agreed price per share is $1000 per share."

32.     Subsequently, Kime received a letter dated November 18, 2005, from Clark D. French as President of CIA-DC notifying Kime that: "Per the restrictive stock agreement and the fact that as of November 7th, 2005, you are no longer an employee of the Corporation," CIA-DC "will be purchasing your shares at $500 per share."

33.     On or about December 5, 2005, Kime declined CIA-DC's offer to purchase Kime's shares at $500 per share.

34.     In December, 2005, Kime, through his attorney, proposed to Clark D. French, through his attorney, that French and Kime select an appraiser to value the shares of CIA-DC for the purpose of applying Section 6 of the Restrictive Stock Agreement.

35.     French refused to discuss any valuation methodology and took the position that the stock could not be valued.

36.     On December 22, 2005, Kime, through his attorney, made a request to Clark D. French, as an officer and director of CIA-DC, for an accounting of the assets, liabilities and income statement of CIA-DC, including all contracts and any inter-company transfers between CIA-DC and CIA-MD, pursuant to Section 29-101.45 of the D.C. Corporations Code.  French refused to provide this information.

37.     According to Plaintiffs, the Board of Directors of CIA-DC, Clark D. French and Mary E. French, passed a resolution in December, 2005, that it was not in CIA-DC's interest to purchase Kime's shares.

38.     Clark D. French notified Kime that he personally would purchase Kime's shares for a total of $600, or 60% of the $1000 subscription price Kime originally paid for the shares.  Clark D. French asserted that the original subscription price for CIA-DC stock set by the CIA-DC Board of Directors was the "Agreed Value" of the shares between the Stockholders as provided in Section 8 of the Restrictive Stock Transfer Agreement.

39.     Throughout the existence of CIA-DC, Clark D. French commingled the funds of CIA-DC and CIA-MD and has caused revenues from CIA-DC contracts to be transferred from CIA-DC to CIA-MD.  On information and belief, there is no valid business record, written agreement or other documentation substantiating the basis for transferring these funds, protecting CIA-DC's assets or ensuring that CIA-DC received fair value in return.

40.     After Kime's termination, Clark D. French unilaterally decided that CIA-DC owed CIA-MD $500,000 for one-half of the companies' web site design although there was no previous agreement between the corporations regarding payment for the web site, and caused a net transfer of cash from CIA-DC to CIA-MD of $320,000.

41.     Clark D. French also caused CIA-MD to pay CIA-DC "revenue" of $114,000 generated from consulting services sold by CIA-DC employee John Gill, but failed to reimburse CIA-DC for John Gill's salary and the commissions owed him on the sale of those services, or to reimburse CIA-DC for the salaries paid to the consultants, resulting in a net loss to CIA-DC of over $600,000.

42.    In addition, among its other contracts, CIA-DC was awarded a contract with the District of Columbia government for the development of software that allowed government employees to access information about all city departments and D.C. citizens to request and track city services.  Pursuant to this contract, CIA delivered a suite of software for the District of Columbia that subsequently has been adapted for sale as an off-the-shelf product to other customers under the name "IntelliGov."  IntelliGov is a valuable corporate asset.

43.    Three employees of CIA-DC designed the software underlying IntelliGov, with support from a low level programmer employed by CIA-MD and an independent contractor consultant to CIA-MD.

44.    Clark D. French now asserts that IntelliGov may not be considered in valuing Kime's shares of CIA-DC because IntelliGov belongs to CIA-MD.

45.    On information and belief, Clark D. French has asserted CIA-MD's ownership in IntelliGov to the detriment of CIA-DC, and Clark D. French and Mary E. French have failed to take reasonable steps to protect CIA-DC's interest in IntelliGov, for the purpose, in part, of diverting an opportunity to obtain investment capital to develop the IntelliGov software from CIA-DC to CIA-MD, and to benefit themselves personally by diverting the value and commercial potential of that asset to a corporation (CIA-MD) wholly owned by Clark D. French, with Mary E. French as beneficial owner.

46.    Based on all the circumstances, there is an immediate, tangible and foreseeable risk that Clark D. French, with the acquiescence, encouragement and assistance of Mary E. French, will continue to deplete the assets of CIA-DC by transferring them to CIA-MD

during the pendency of this action in order to arrogate the value of CIA-DC to themselves as legal and beneficial owners of CIA-MD, and to deny Roy Kime any meaningful relief.

47.     At all times material to this action and continuing to the present day, Roy Kime has been and is a shareholder of CIA-DC.  This action is not a collusive one for the purpose of conferring jurisdiction on a court of the United States that it would not otherwise have.

48.      Demand on the directors of CIA-DC to assert the rights of the corporation against Clark D. French, Mary E. French and CIA-MD was not made, and would have been futile, for the following reasons.  Clark D. French and Mary E. French are the only directors of CIA-DC, both have a personal interest in the actions and transactions complained of that conflicts with the interests of CIA-DC, both participated in and facilitated those actions and transactions, and both are defendants in this Counterclaim.

COUNT I – Against Clark D. French
Breach of Shareholder's Fiduciary Duty to Shareholder

49.     Defendant incorporates by reference as if full set forth herein the allegations contained in paragraphs 1 through 48 of the Counterclaim and all of the averments in his Answer to the Complaint.

50.     As a fifty percent shareholder in a closely held corporation, Clark D. French had a fiduciary obligation to the other fifty percent shareholder, Roy Kime, to deal fairly, honestly and openly with him.

51.     The Restrictive Stock Transfer Agreement clearly contemplated that the signatory Stockholders would agree upon the value of the shares based on the actual net worth of the corporation.

52.     The requirement in the Restrictive Stock Transfer Agreement that the "Stockholders" agree on a value for the stock clearly is not satisfied by the unilateral act of the CIA-DC Board of Directors in setting the original subscription price (i.e., paid in capital) for the stock, whether or not Clark D. French, as a Stockholder, unilaterally "agreed" with the Board's determination.

53.     By insisting that the Board of Directors' determination of the original stock subscription price constitutes the agreement of the Stockholders within the meaning of the Restrictive Stock Transfer Agreement, and that Kime's shares must, therefore, be valued at $10 per share, which grossly understates the actual value of those shares, and by refusing to consent to an appraisal or engage in any good faith negotiation with Kime to arrive at an agreed-upon figure, Clark D. French is violating his fiduciary duty to deal fairly and honestly with Roy Kime.

54.     Clark D. French's conduct was and is outrageous, willful, malicious, and oppressive, in reckless disregard of Kime's rights and intended injure Kime, and has and will result in unjust enrichment to French.

COUNT II – Against Clark D. French and Mary E. French
Breach of Directors' Fiduciary Duty to Shareholder

55.     Defendant incorporates by reference as if full set forth herein the allegations contained in paragraphs 1 through 54 of the Counterclaim and all of the averments in his Answer to the Complaint.

56.     As directors of CIA-DC, Clark D. French and Mary E. French had a fiduciary duty to all corporate shareholders equally and were not permitted to favor one

shareholder over another, particularly when they themselves derive a personal benefit from doing so.

57.    Clark D. French and Mary E. French violated their fiduciary duty to shareholder Roy Kime by making or causing CIA-DC to make a unilateral offer to Roy Kime for his shares without regard to fair value, and then by passing, or purporting to pass, a resolution in December, 2005, that it was not in CIA-DC's best interest to purchase Kime's shares for the purpose of allowing Clark D. French to attempt to purchase those shares for himself at well below fair value, which inures to his personal benefit and to the personal benefit of his wife, Mary E. French.

58.    The conduct of Clark D. French and Mary E. French was and is outrageous, willful, malicious, and oppressive, in reckless disregard of Kime's rights and intended injure Kime, and has and will result in unjust enrichment to Clark D. French and Mary E. French.

### COUNT III – Against Clark D. French
### Breach of Covenant of Good Faith and Fair Dealing

59.    Defendant incorporates by reference as if full set forth herein the allegations contained in paragraphs 1 through 58 of the Counterclaim and all of the averments in his Answer to the Complaint.

60.    Implied in every contract is a covenant of good faith and fair dealing. The implied covenant of good faith and fair dealing provides that no party to a contract shall take any action that will injure or destroy the right of the other party to receive the fruits of the agreement or to defeat the other party's justified expectations.

61.    The covenant of good faith and fair dealing prohibits a party to the contract from evading the purpose of the agreement, abusing a power to specify terms, willfully rendering imperfect performance or interfering with the other party's performance.

62.    Clark D. French breached the covenant of good faith and fair dealing in the Restrictive Stock Transfer Agreement by (a) abusing his position as President of CIA-DC to terminate Roy Kime without legitimate cause in order to trigger the stock sale provision in the Restrictive Stock Transfer Agreement, and (b) by refusing to agree to a reasonable valuation of Kime's shares, instead insisting that the shares are worth only $600, with (c) the purpose and effect of forcing Roy Kime out of the corporation and enabling French to obtain one hundred percent ownership of the corporation for a pittance and (d) defeating Kime's justified expectation that the purchase price for his shares would reflect the fair value of his investment.

63.    Clark D. French's conduct was and is outrageous, willful, malicious, and oppressive, in reckless disregard of Kime's rights and intended injure Kime, and has and will result in unjust enrichment to French.

COUNT IV – Against Clark D. French and Mary E. French<br>
Breach of Directors' and Officers' Fiduciary Duty to Corporation and/or Shareholder<br>
(Self Dealing)

64.    Defendant incorporates by reference as if full set forth herein the allegations contained in paragraphs 1 through 63 of the Counterclaim and all of the averments in his Answer to the Complaint.

65.    As directors and officers of CIA-DC, Clark D. French and Mary E. French owed a duty of loyalty to Kime and CIA-DC that prohibited them from engaging in, acquiescing

in and failing to disclose transactions with the corporation that inured to their own personal benefit.

66.     Clark D. French and Mary E. French violated their duty of loyalty to CIA-DC by causing, facilitating and failing to prevent or disclose the transfer of corporate assets from CIA-DC to CIA-MD without receiving fair value in return, which transfer of assets inured to the personal benefit of Clark D. French, as the sole owner of CIA-MD, and his wife, Mary E. French.

67.     This breach of fiduciary duty imposed a unique injury on Roy Kime as a shareholder of CIA-DC that is not shared by CIA-DC's only other shareholder, Clark D. French, and violated Clark D. French's and Mary E. French's fiduciary duty to Kime, because it has the purpose and effect of enriching Clark D. French at Kime's expense by diminishing the value of Kime's fifty percent ownership interest in CIA-DC to cause a corresponding increase in the value of Clark D. French's one hundred percent ownership interest in CIA-MD, and Mary E. French's corresponding beneficial ownership in CIA-MD.

68.     The conduct of Clark D. French and Mary E. French was and is outrageous, willful, malicious, oppressive, in reckless disregard of Kime's and CIA-DC's rights and intended injure them, and has and will result in unjust enrichment to Clark D. French and Mary E. French.

COUNT V – Against Clark D. French and Mary E. French
Breach of Directors' and Officers' Fiduciary Duty to Corporation and/or Shareholder
(Usurpation of Corporate Opportunity)

69.     Defendant incorporates by reference as if full set forth herein the allegations contained in paragraphs 1 through 68 of the Counterclaim and all of the averments in his Answer to the Complaint.

70.     As directors and officers of CIA-DC, Clark D. French and Mary E. French owed a duty of loyalty to Kime and CIA-DC that prohibited them from taking for themselves a business opportunity belonging to the corporation.

71.     Clark D. French and Mary E. French violated their duty of loyalty to CIA-DC by causing, facilitating and allowing CIA-MD to assert ownership rights to the software known as IntelliGov, and failing to take steps to protect CIA-DC's interest in that corporate asset, for the purpose of obtaining for themselves, though Clark D. French's and Mary E. French's one hundred percent legal and beneficial ownership in, and complete control over, CIA-MD, all benefits, investment capital, and future business opportunities arising from the alleged ownership, development and marketing of that asset.

72.     This breach of fiduciary duty imposed a unique injury on Roy Kime as a shareholder of CIA-DC that is not shared by CIA-DC's only other shareholder, Clark D. French, and violated Clark D. French's and Mary E. French's fiduciary duty to Kime, because it has the purpose and effect of enriching Clark D. French at Kime's expense by diverting a significant corporate asset of CIA-DC with significant future income producing potential from the corporation in which Kime owns a fifty percent interest to a

corporation in which Clark D. French owns a one hundred percent interest and Mary E. French has a corresponding beneficial interest.

73.    The conduct of Clark D. French and Mary E. French was and is outrageous, willful, malicious, oppressive, in reckless disregard of Kime's and CIA-DC's rights and intended injure them, and has and will result in unjust enrichment to Clark D. French and Mary E. French.

COUNT VI – Against Clark D. French and Mary E. French
Abuse of Process

74.    Defendant incorporates by reference as if full set forth herein the allegations contained in paragraphs 1 through 73 of the Counterclaim and all of the averments in his Answer to the Complaint.

75.    Abuse of process occurs when a plaintiff uses judicial process to accomplish some end which is without the regular purview of the process, or which compels the party against whom it is used to do some collateral thing that he could not legally and regularly be required to do.

76.    Plaintiffs have abused the process of this Court by causing and permitting CIA-DC to sue Defendant Kime for alleged breach of contract and breach of fiduciary duty with respect to his expenses for the purpose of achieving the extrajudicial aim of forcing Kime to accept Clark D. French's offer to purchase his shares of CIA-DC for a price that is well below their fair market value, which Kime could not otherwise legally or regularly be forced to do.

77.    The conduct of Clark D. French and Mary E. French was and is outrageous, willful, malicious, and oppressive, in reckless disregard of Kime's rights and intended

injure Kime, and has and will result in unjust enrichment to Clark D. French and Mary E. French.

COUNT VII – Against Clark D. French and Mary E. French
Civil Conspiracy

78.     Defendant incorporates by reference as if full set forth herein the allegations contained in paragraphs 1 through 77 of the Counterclaim and all of the averments in his Answer to the Complaint.

79.     By the conduct alleged in this Answer, Complaint and Counterclaim, Clark D. French and Mary E. French have combined and conspired, and are continuing to combine and conspire, to commit unlawful acts, including breach of the Restrictive Stock Transfer Agreement and violation of their fiduciary duties, in order to force Roy Kime to surrender his interest in CIA-DC at well below its market value for the personal benefit of Clark D. French and Mary E. French, and/or to commit lawful acts for the unlawful purpose of depriving Roy Kime of the value of his investment and his contractual and legal rights as a shareholder of CIA-DC.

80.     The conduct of Clark D. French and Mary E. French was and is outrageous, willful, malicious, and oppressive, in reckless disregard of Kime's rights and intended injure Kime, and has and will result in unjust enrichment to Clark D. French and Mary E. French.

COUNT VIII – Against Clark D. French, Mary E. French and CIA-MD
Violation of the District of Columbia Uniform Trade Secrets Act

81.     Defendant incorporates by reference as if full set forth herein the allegations contained in paragraphs 1 through 80 of the Counterclaim and all of the averments in his Answer to the Complaint.

82.     The source code for the suite of software now known as IntelliGov, as well as all information pertaining to its adaptation for general use, constitutes a trade secret of CIA-DC.

83.     Clark D. French and Mary E. French, as officers and directors of CIA-DC, had a duty of care and loyalty to CIA-DC and its shareholders to maintain the confidentiality of that information and limit its use.

84.     Instead, Clark D. French and Mary E. French have caused, facilitated and acquiesced in the misappropriation of that trade secret by CIA-MD for benefit of CIA-MD and their own personal benefit in violation of the District of Columbia Uniform Trade Secrets Act, D.C. Code §§ 36-401-410.

85.     CIA-MD obtained this trade secret under circumstances giving rise to a duty to maintain its secrecy and limit its use and with knowledge that it was obtained in violation of Clark D. French's and Mary E. French's breach of duty, but has nevertheless misappropriated it and is exploiting its commercial value for itself in violation of the District of Columbia Uniform Trade Secrets Act, D.C. Code §§ 36-401-410.

86.     The conduct of CIA-MD, Clark D. French and Mary E. French was and is outrageous, willful, malicious, oppressive, in reckless disregard of Kime's and CIA-DC's rights and intended injure them, and has and will result in unjust enrichment to CIA-MD, Clark D. French and Mary E. French.

COUNT IX – Against Clark D. French and Mary E. French
Violation of the District of Columbia Wage Payment and Collection Law

87.     Defendant incorporates by reference as if full set forth herein the allegations contained in paragraphs 1 through 86 of the Counterclaim and all of the averments in his Answer to the Complaint.

88.     Clark D. French and Mary E. French, as officer and directors of CIA-DC, constitute "employers" subject to the requirements of the District of Columbia Wage Payment and Collection Law, D.C. Code §§ 32-1301-1310.

89.     In the year 2005, Clark D. French and Mary E. French permitted Roy Kime to render services as an employee of CIA-DC with an agreed-upon annual salary of $180,000.

90.     Upon his termination from employment with CIA-DC on or about November 7, 2005, Kime was owed pro rata salary in the amount of $60,000.

91.     Clark D. French and Mary E. French have failed and refused to pay Roy Kime the balance due on his salary in violation of the Wage Payment and Collection Law, D.C. Code §§ 32-1303 and 1304.

92.     The conduct of Clark D. French and Mary E. French was and is outrageous, willful, malicious, and oppressive, in reckless disregard of Kime's rights and intended injure Kime.

WHERFORE, Roy Kime prays for an order granting the following relief:

(a) Appointing a receiver for CIA-DC to ensure that the assets of CIA-DC are not diverted to CIA-MD or elsewhere pending a valuation of Roy Kime's ownership interest in CIA-DC;

(b) Ordering an accounting of all revenues and profits of both CIA-DC and CIA-MD;

(c) Directing CIA-DC and CIA-MD to make all of their corporate books and records available to Defendant within no more than five (5) business days from the date of this Order and for so long as is reasonably necessary to complete an accounting;

(d) Ordering Clark D. French and Mary E. French and CIA-MD to repay CIA-DC all monies paid by CIA-DC to CIA-MD for which no fair value was received and/or documented;

(e) Enjoining Clark D. French, Mary E. French and CIA-MD from misappropriating and threatening to misappropriate the software suite now known as IntelliGov and all source code, variations, adaptations and developments of that software;

(f) Imposing a constructive trust for the benefit of CIA-DC on all profits derived from the sale, licensing or marketing of the software now known as IntelliGov and all source code, variations, adaptations and developments of that software;

(g) Awarding damages to CIA-DC for any and all losses incurred by the misappropriation of the software now known as IntelliGov and all source code, variations, adaptations and developments of that software;

(h) Awarding exemplary damages for misappropriation in the amount of twice the award of actual damages for lost profit and unjust enrichment;

(i) Ordering Clark E. French and Mary E. French to disgorge all profits, compensation or remuneration or thing of value of any kind they, or either of them, received from CIA-DC during the period of their breach of fiduciary duty to it;

(j) Awarding Roy Kime unpaid salary in the amount of $60,000, plus liquidated damages in the amount of no less than an additional $60,000;

(k) Ordering an independent appraisal of the value of Defendant's stock in CIA-DC as follows. Within ten (10) days of the date of this order, each party shall designate an independent appraiser to value the shares of CIA-DC. Each appraiser shall render an opinion as to the value of the stock. The price per share for Roy Kim's stock shall be set at the average of the two prices. Each party shall bear the cost of his own appraiser. If either party fails to choose an appraiser within ten (10) days of the date of this order, the appraiser chosen by the other party shall conduct the appraisal and both parties shall be bound by the result.

(l) Awarding Defendant the costs and attorneys fees of this suit;

(m) Awarding Defendant punitive damages in the amount of $500,000; and

(n)  Such other relief as this Court deems just and proper.

## VERIFICATION

I hereby verify under penalty of perjury that the foregoing allegations and averments of fact are true and correct to the best of my knowledge, information and belief.

Dated: February 16, 2005, Washington, D.C.


*ss/ Roy Kime*_____
                ROY KIME



Respectfully submitted,


SCHMELTZER, APTAKER
& SHEPARD, P.C.

*ss/ Katherine Brewer*_____
Katherine Brewer, # 375608
Edward R. Levin, # 7823
2600 Virginia Ave., N.W.
Suite 1000
Washington, D.C. 20037
(202) 333-8800
(202) 625-3301 (facsimile)

*Attorneys for Defendant/Counterclaim*
*Plaintiff Roy Kime*