**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CLARK FRENCH, et al. ) | |
| ) | |
| Plaintiffs/Counter-Defendants, ) | |
| ) | |
| v. ) | Civil No. 05-cv-02448-RMU |
| ) | |
| ROY KIME ) | |
| ) | |
| Defendant/Counter-Plaintiff. ) | |

**COUNTER-DEFENDANTS' MOTION TO DISMISS COUNTS I-III
AND VI-IX OF THE COUNTERCLAIM IN THEIR ENTIRETY
AND TO DISMISS COUNTS IV AND V OF THE COUNTERCLAIM
IN PART AND COUNTER-DEFENDANTS' MOTION TO
STRIKE PARAGRAPHS 28, 30, 31, 32, 33 AND 35 OF THE COUNTERCLAIM**

Pursuant to Fed. R. Civ. P. 12(b)(6) and 12(f), Plaintiffs/Counter-Defendants Clark

French ("French") and Computer Intelligence Associates, Inc. D.C. ("CIA-DC") and Counter-

Defendants Computer Intelligence Associates, Inc. MD ("CIA-MD") and Mary French

respectfully request that the Court dismiss Counts I-III and VI-IX of Defendant/Counter-Plaintiff

Roy Kime's ("Kime") Counterclaim in their entirety and Counts IV and V of the Counterclaim

in part because these causes of action fail to state claims upon which relief can be granted.

**Preliminary Statement**

This action concerns the firing of admitted at-will employee Kime by his employer CIA-

DC, which brought this action to determine the amount Kime should repay CIA-DC as a result of

his expense account fraud, which far out-measures the token payment to which Kime is

contractually entitled for the redemption of his stock in CIA-DC that CIA-DC's founder and

President, Clark French, effectively gifted to Kime upon his employment.  In response to CIA-

DC's Complaint, Kime adopts a classic "kitchen sink" approach, asserting nine counts against CIA-DC, French, French's wife ("Mary") and CIA-MD (French's company founded years before CIA-DC), which run the gamut from abuse of process to civil conspiracy to piracy of intellectual property.

The gravaman of all of Kime's claims is that he is entitled to receive some percentage of an "appraised" value of CIA-DC as of the date of his termination, which amount, according to Kime, must take into account French and his wife's raiding of the corporate fisc and piracy of a so-called valuable software product called "Intelligov." Thus, Kime possesses only two arguably legitimate causes of action: (1) breach of contract to redeem his stock and (2) breach of fiduciary duty relating to the alleged raiding of the corporate fisc and Intelligov.[1]

As to breach of contract, surprisingly, Kime does not assert such a claim. Rather, he incorrectly packages breach of contract allegations into two breach of fiduciary duty counts, Counts I and II, no doubt in an effort to secure tort damages. It is well-settled under applicable Maryland law, however, that a claimant cannot turn contract claims into tort claims. Count I and II should therefore be dismissed with leave to replead as a contract claim.

As to the breach of fiduciary duty counts relating to corporate raiding and Intelligov, Counts IV and V, Kime improperly included derivative allegations. Kime cannot sue derivatively because he no longer was a rightful shareholder at the time this action was brought. These counts should be dismissed in part.

---

[1] By "legitimate," we really mean legally cognizable; we believe a trial on these claims will not support any recovery by Kime and we expect these claims to be amenable to summary judgment at the close of discovery.

Similarly, all of Kime's "kitchen sink" claims should be dismissed because they do not present cognizable causes of action on the facts pled by Kime. Finally, Kime's improper submission in his counterclaim of inadmissible settlement discussions should be stricken.

### Statement of Facts

### A.    French Caused CIA-DC to be Organized Under the Laws of the District of Columbia

Clark French is the Founder, President and CEO of Computer Intelligence Associates, Inc. Maryland ("CIA-MD"), which French founded in 2001. See Maryland State Department of Assessments and Taxation Report, Exhibit A.[2] CIA-MD is a leader in the boutique custom software and IT solutions industry, focusing primarily on the government and commercial sectors. By 2003, when CIA-DC was formed, CIA-MD was a successful business.

In early 2003, French sought to expand into the District of Columbia. On February 7, 2003, Clark French and his wife, Mary French, caused CIA-DC to be incorporated under the laws of the District of Columbia by filing CIA-DC's Articles of Incorporation with the District of Columbia Department of Regulatory and Consumer Affairs. Complaint ("Compl.") at ¶ 6; Counterclaim at ¶¶6,7. Since its inception, French and his wife have been the only members of CIA-DC's Board of Directors, French has been the President and Treasurer of CIA-DC, and Mary French has been CIA-DC's Secretary. Compl. at ¶¶ 8, 9; Counterclaim at ¶¶ 8, 9. In February, 2003, CIA-DC issued 100 shares of common stock to French in consideration for French's payment of $1,000 (or $10 per share). Compl. at ¶ 8; Counterclaim at ¶ 10. Kime admits that French was the only shareholder at this time. Counterclaim at ¶ 10.

---

[2]  The Court may take judicial notice of this public record pursuant to Fed. R. Evid. 901.

**B.    CIA-DC Hired Kime Based Upon Kime's Representation
That He Would Develop CIA-DC's Business**

Prior to French's formation of CIA-DC, French learned from one of his contacts in the

District of Columbia government that Kime could be an asset to marketing French's business in

the District of Columbia because Kime had numerous contacts in the business and government

community in this area.  During the month of February 2003, CIA-DC offered Kime

employment, which Kime accepted.  Compl. at ¶ 9; Counterclaim at ¶¶ 22, 23.  Kime was an at-

will employee of CIA-DC.  Compl. at ¶ 10; Answer at ¶15.  To provide Kime with the incentive

of ownership, CIA-DC, through French, "sold" Kime 100 shares of CIA-DC common stock in

exchange for $1,000 (or $10 per share).  Id.  Compl. at ¶ 10; Answer at ¶¶ 14, 16.  This

amounted to a 50% interest in this start-up business.

On February 27, 2003, pursuant to a resolution passed at a special meeting of CIA-DC's

Board of Directors (the "February 27, 2003 Resolution"), CIA-DC issued 1,000 shares of

common stock to Kime in exchange for $1,000.  Compl. at ¶ 11; Counterclaim at ¶ 12.  The

February 27, 2003 Resolution was signed by Mary French and CIA-DC's then only shareholder,

Plaintiff French.  Compl. at ¶ 11.  The February 27, 2003 Resolution was also filed with CIA-

DC's corporate minute book.  Id.

Also, on February 27, 2003, CIA-DC, Kime and CIA-DC's only other shareholder,

French, entered into a Restrictive Stock Transfer Agreement (the "Agreement"), which limited

French and Kime's ability to transfer their CIA-DC stock.  Id. at ¶ 12; Counterclaim at ¶ 13.  A

true and complete copy of the Restrictive Stock Transfer Agreement is attached to the Complaint

as Exhibit A and hereto as Exhibit B.

C.    **Kime's Employment is Terminated and Kime Breaches
the Restrictive Stock Transfer Agreement**

On or about November 6, 2005, through a letter from CIA-DC's President, French, CIA-DC terminated Kime's employment. Compl. at ¶ 21; Counterclaim at ¶ 27.[3]  Section 6 of the Agreement, entitled "Cessation of Employment" provides, inter alia, that in the event a CIA-DC shareholder's employment at CIA-DC is terminated, the "Departing Stockholder" (here, Kime) immediately shall "offer all of his shares of Common Stock...first, to the Corporation [CIA-DC], and, second, to the other Stockholders…." See Exhibit A at ¶ 6.  Section 6 further provides that the purchase price shall be "Sixty Percent (60%) of the Agreed Value of the Shares," as defined later in the Agreement. Id.

Section 8 of the Agreement provides that the "Agreed Value" of the CIA-DC shares "shall be the per share dollar amount last agreed upon in writing by all of the Stockholders, which agreement shall be dated and filed with the minute book of the Corporation…." See Exhibit A at ¶ 8.  This Agreed Value is evidenced by the February 27, 2003 Resolution, which is the most recent writing filed with the corporate minute book setting forth the value of the stock, which value was agreed upon by French, the only CIA-DC shareholder at that time. Id.  In addition, Kime had notice that $10 per share was the most recent per share value agreed upon by the shareholders, as he was given a copy (or had access to) the resolution through which CIA-DC issued Kime's shares at a value of $10 per share. Id.

In December 2005, CIA-DC's Board of Directors passed a resolution stating that CIA-DC has determined that it would not be in CIA-DC's best interest to purchase Kime's shares. Id. at ¶ 27.  CIA-DC's action thus obviates Kime's obligation to first offer his shares to CIA-DC

_____

[3] As set forth in the Complaint, CIA-DC has asserted claims against Kime for fraudulently obtaining reimbursement for personal expenses by representing that the expenses were legitimate business expenses. See Complaint at ¶¶ 13-20; 30-45.

pursuant to Sections 5 and 6 of the Agreement. Id.; Counterclaim at ¶ 37. After Kime's termination, French demanded that Kime comply with the Agreement's requirements and that Kime offer his CIA-DC stock for sale to French. Compl. at ¶ 28; Counterclaim at ¶ 38.

### D. Kime Asserts that Counter-Defendants have Violated the Law

Kime asserts that at various times (including after his employment at CIA-DC terminated), French "caused revenues from CIA-DC's contracts to be transferred from CIA DC to CIA MD" and transferred funds from CIA-DC to CIA-MD for the companies' website. Counterclaim at ¶¶ 39-40. In addition, Kime claims that employees of both CIA-DC and CIA-MD created a software product known as "Intelligov" and that French has now asserted that Intelligov belongs to CIA-MD. Id. at ¶¶ 42-44.[4]

### E. French and CIA-DC Initiate a Lawsuit for Kime's Breaches, And Kime Files a Counterclaim

On December 22, 2005, French and CIA-DC filed the instant Complaint for Breach of Contract, Breach of Fiduciary Duty and Specific Performance seeking damages due to Kime's breaches of his obligations to CIA-DC related to the fraudulent expense reimbursement, as well

---

[4] Although not necessary for purposes of deciding this motion, by way of background regarding Intelligov (and as will be shown on summary judgment), CIA-DC was awarded a contract to provide a software system to the District of Columbia government to track city services. Employees of both CIA-DC and CIA-MD participated in developing this tracking software product, "SRC," which was eventually delivered to the District of Columbia and which the District of Columbia government now owns. French then determined that other government entities may find such a software suite useful and approached Kime about developing an "off the shelf" product for sale. Upon learning that additional funds would be required to develop the product, Kime rejected the idea and stated that he thought that it was a waste of money. Thus, French, using CIA-MD assets, developed the "Intelligov" product and CIA-MD markets it for sale. To the extent that any personnel who were traditionally paid salaries by CIA-DC participated in the development of Intelligov, CIA-MD reimbursed CIA-DC for the time those employees spent on such development. Thus, the CIA-DC employees who took part in developing Intelligov were essentially independent contractors of CIA-MD. French is thus within his rights to assert that Intelligov, which was developed using solely CIA-MD's assets, belongs to CIA-MD.

as specific performance of Kime's obligation to tender his shares under the Agreement.  On

February 21, 2006, Kime filed an Answer and Counterclaim against French and CIA-DC, and

also added new Counterclaim Defendants Mary French and CIA-MD, a Maryland entity owed by

Clark and Mary French.  The nine (9) count Counterclaim seeks various relief both derivatively

on behalf of CIA-DC and personally on behalf of Kime under the theories of Breach of Fiduciary

Duty, Breach of the Covenant of Good Faith and Fair Dealing, Abuse of Process, Civil

Conspiracy, Violations of the D.C. Uniform Trade Secrets Act and Violations of the D.C. Wage

Payment Laws.

## Argument

I.    **Counts I-III and VI-IX of the Counterclaim are Subject
to Dismissal in their Entirety and Counts IV and V of the
Counterclaim are Subject to Dismissal in Part**

A.    **Standard of Review**

When considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court

must consider all factual allegations in the pleadings as true and construe all reasonable

inferences in the plaintiff's (or, as here, the Counter-Plaintiff's) favor.  See Conley v. Gibson,

355 U.S. 41, 45-46 (1957).  However, the Court "need not accept inferences drawn by plaintiffs

if such inferences are unsupported by the facts set forth in the complaint.  Nor must the court

accept legal conclusions cast in the form of factual allegations."  See Kowal v. MCI

Communications Corp., 16 F.3d 1271, 1276 (D.C.Cir. 1994).  A motion to dismiss is properly

granted when, even in light of the above standards, the plaintiff (or, as here, the Counter-

Plaintiff) can prove no set of facts that would entitle him to relief.  See Conley, 355 U.S. at 45-

46.

7

Here, as explained more fully below, Kime has not adequately alleged facts to constitute his claims for breach of fiduciary duty, breach of the covenant of good faith and fair dealing, abuse of process, conspiracy, violations of the D.C. Uniform Trade Secrets Act and violations of the D.C. Wage Payment and Collection Law against Clark and Mary French and CIA-MD. Counts I-III and VI-IX of Counterclaim should thus be dismissed. In addition, to the extent that Counts IV and V allege derivative claims on behalf of CIA-DC, they should be dismissed because Kime lacks standing to pursue these claims on behalf of CIA-DC.

**B.      Count One Fails to State a Claim Against French for**
**Breach of Fiduciary Duty to Shareholder**

Kime's first cause of action is asserted against Clark French and alleges that French violated his fiduciary duty as a shareholder to Kime as another shareholder by: (i) insisting that the "agreed value" of Kime's shares is the original subscription price; and (ii) failing to agree to an appraisal. Counterclaim at ¶¶ 49-53. This claim fails for two reasons. First, as explained more fully below, although shareholders may owe each other fiduciary duties, the breaches that Kime alleges are prefaced on duties allegedly arising from the Restrictive Stock Transfer Agreement ("Agreement") and thus this claim sounds in contract, and not in tort. Second, Kime has failed to allege that he was injured by the alleged breach, which is an essential element of this claim.

Because the alleged breaches of fiduciary duty are premised on breach of the Agreement, Kime's first claim is governed by Maryland law. See Exhibit A at ¶ 15(d) ("This Agreement shall be construed and enforced in accordance with, and the rights of the parties shall be governed by, the laws of the State of Maryland."). It is well-established in Maryland that there is "no universal or omnibus tort for breach of fiduciary duty," and that the court must examine the facts and circumstances of each case. Kann v. Kann, 344 Md. 689, 713 (1997); see also

Vinogradova v. Suntrust Bank, Inc., 162 Md. App. 495, 510 (2005)("Maryland does not

recognize a separate tort action for breach of fiduciary duty"); quoting International Brotherhood

of Teamsters v. Willis Corroon Corp. of Maryland, 369 Md. 724, 727 n.1 (2002).  Indeed, as the

Kann court noted, the Maryland Court of Appeals has specifically declined to adopt a theory that

would transform a breach of contract (even if in bad faith) into a tort.  Id.; citing K&K

Management Inc. v. Lee, 316 Md. 137, 169 (1989); Alexander & Alexander, Inc. v. B. Dixon

Evander & Assocs., 336 Md. 635, 654 (1994).

Here, Kime's attempt to convert a breach of contract case into a tort case should fail.

Kime alleges that the Agreement "clearly contemplated" that the Agreed value would be based

on the "actual net worth of the corporation."  Counterclaim at ¶ 51.  Kime further alleges that the

requirement that the "agreed value" be agreed upon by the shareholders is not satisfied by French

"unilaterally" agreeing with the Board's determination of the subscription price.  Id. at ¶52.[5]

Thus, Kime asserts, because the Agreement contained these "requirements," French breached his

duty to deal fairly and honestly with Kime by insisting that the subscription price is the "agreed

value" of the shares and by refusing to consent to an appraisal.  Id. at ¶ 53.  It is thus clear that,

even taking Kime's allegations as true, he is actually asserting breaches of the Agreement, not

breach of a duty allegedly owing to Kime based upon French's role as a 50% shareholder.

Because, as explained in the cases cited in Kann, such an alleged breach of contract is not

actionable as a tort, Kime's first claim for breach of fiduciary duty should be dismissed, albeit

with leave to amend to assert the cause of action properly as one for breach of contract.

_____

[5]    As set forth in the Complaint, this contention also ignores that French was already a
shareholder when the "subscription price" of Kime's shares was set.  Thus, the last value agreed
upon by the shareholders of CIA-DC prior to the Agreement (when French was the sole
shareholder) was $10 per share.  Compl. at ¶ 25.

Second, Maryland law is equally clear that if Maryland were to recognize the tort of breach of fiduciary duty, the elements of this tort include: "(1) the existence of a fiduciary relationship, (2) a breach of that duty owed by the fiduciary to the beneficiary, and (3) harm resulting form the breach." <u>Alleco Inc. v. Harry & Jeanette Weinberg Foundations, Inc</u>., 340 Md. 176, 192 (1995); <u>citing</u> Restatement (Second) Torts, § 874 (1979). Here, Kime has failed to allege how he was injured or even that he was injured at all. <u>See</u> Counterclaim at ¶¶ 49-54. Because this critical element of Kime's cause of action (if there is one) is lacking, Count I should be dismissed.

### C.    Count II Fails to State a Cause of Action Against Clark and Mary French for Breach of Directors' Fiduciary Duty to Shareholder

Kime next asserts that Clark and Mary French had a duty to Kime not to favor one shareholder over another and that the passage of a resolution stating that it was not in the corporation's best interest to re-purchase Kime's stock was a breach of this duty because it had the effect of personally benefiting French. Counterclaim at ¶57. There are several fundamental flaws with this argument. First, it ignores that no matter who purchased Kime's stock – French or CIA-DC – the result is the same because after the sale, French will own one hundred percent of CIA-DC, so it is of no consequence how the stock was purchased.

Second, as explained above, because the factual basis for this cause of action is a resolution that was passed pursuant to CIA-DC's rights under the Agreement, Kime again seeks to transform an alleged breach of contract into a tort, which the law does not contemplate.

In addition, this allegation ignores that the directors determined that it was not in CIA-DC's best interest to purchase the shares and Kime has not alleged (nor could he) that it would have been in CIA-DC's best interest to re-purchase the stock. Thus, there is simply no

allegation that Clark and Mary French acted against the corporation's best interests. Absent such an allegation, this cause of action fails.[6]

### D. Count III Fails to State a Claim Against Clark French for Breach of Covenant of Good Faith and Fair Dealing

Kime's third cause of action for breach of the covenant of good faith and fair dealing is premised upon Clark French: (a) terminating Kime "without cause" so that the stock sale provisions were "trigger[ed]"; (b) refusing to agree on a reasonable value for Kime's shares; with (c) the purpose of enabling French to acquire 100% of CIA-DC stock; and (d) "defeating Kime's justified expectation that the purchase price for his shares would reflect the fair value of his investment." Counterclaim at ¶¶ 62.[7] Kime's third cause of action is fatally flawed because a breach of the implied covenant of good faith and fair dealing is not an independent cause of action.[8]

Instead of alleging that French's insistence that the "agreed value" is $10 per share is a breach of the actual terms of the Agreement, Kime claims that French's actions allegedly constitute breaches of an <u>implied</u> term of good faith and fair dealing. However, Kime relies upon a cause of action that Maryland does not recognize.

---

[6] Moreover, as explained above, Kime's pleading defect regarding any alleged injury to Kime persists in this cause of action. Nowhere in Count II does Kime allege that he was injured by Clark and Mary French's actions as directors in passing the resolution. Counterclaim at ¶¶ 55-58.

[7] Because the duty and alleged breaches set forth in this cause of action arise from the Agreement, this cause of action is governed by Maryland law. <u>See</u> Exhibit A at § 15(d).

[8] As to Kime's termination, Kime admits that he was an at-will employee. Answer at ¶ 10. District of Columbia law is clear that there is no implied covenant of good faith and fair dealing in at-will employee relationships, nor was Kime's employment relationship with Clark French individually. <u>See</u> <u>Kerrigan v. Britches of Georgetown</u>, 705 A.2d 624, 625-627 (D.C. 1997); <u>Tripp v. U.S.</u> 257 F. Supp. 2d 37, 46 (D.D.C. 2003). Thus, Kime's allegation that French terminated Kime without cause does not support this claim.

In <u>Baker v. Sun Company, Inc.</u>, 985 F. Supp. 609, 610 (D. Md. 1997), the United States District Court for the District of Maryland dismissed a cause of action based upon a party's alleged breach of the implied duty of good faith and fair dealing. In so holding, the court examined Maryland state law and concluded that because the Maryland Court of Special Appeals has specifically held that the implied duty does not require a contracting party to take affirmative action not required by the contract, "Maryland does not recognize an independent cause of action for breach of the implied contractual duty of good faith and fair dealing." <u>Id</u>. Thus, just as in <u>Baker</u>, dismissal is proper here because no such separate cause of action exists in Maryland.

Indeed, as the Maryland Court of Special Appeals held in <u>Parker v. The Columbia Bank</u>, 91 Md. App. 346, 366 (1992), the implied covenant of good faith and fair dealing does not require the parties to the contract to take affirmative steps that are not required by the terms of the contract itself. <u>Id</u>. Instead, the implied covenant simply prevents a party from taking steps to prevent the other party's performance of its obligations. <u>Id</u>. Here, the plain language of the Agreement does not require French to agree on a "reasonable valuation" of the shares, nor have any of French's actions prevented Kime from tendering Kime's stock as required by the Agreement. Thus, even if this cause of action existed in Maryland, because the acts that Kime complains of would not constitute breaches of the implied duty in any event, Count III of Kime's complaint should be dismissed.

### E.    Counts IV and V Fail to State a Derivative Claim against Clark and Mary French for Breach of Officer's and Director's Fiduciary Duty to Corporation and/or Shareholder

Kime's next claims appear to be two-fold, partially asserted derivatively on behalf of

CIA-DC, and partially asserted on behalf of Kime personally.[9]   The derivative portion of these

claims fail because, as more fully explained below, Kime lacks standing to assert the rights of

CIA-DC.  Kime alleges in Count IV that Clark and Mary French breached their duty to CIA-DC

to refrain from self-dealing by allegedly transferring assets from CIA-DC to CIA-MD, in which

corporation Kime alleges Clark French is a 100% shareholder.  Counterclaim at ¶ 66.  Kime then

alleges in Count V that Clark and Mary French "usurped" CIA-DC's corporate opportunity by

permitting CIA-MD to assert rights to the software known as "Intelligov."  Counterclaim at ¶ 71.

These "derivative" causes of action fail to state a claim for several reasons.

First, Fed. R. Civ. P. 23.1 provides that a derivative action may be brought "by one or

more shareholders…to enforce a right of a corporation."  This introduction has been interpreted

by the Federal Courts to require that a plaintiff who brings a derivative claim be a shareholder at

the time the suit is commenced (as well as at the time of the transaction of which he complains)

and that he stays a shareholder throughout the pendency of the proceedings.  See Mayflower

Hotel Stockholders Protective Committee v. Mayflower Hotel Corporation, 73 F. Supp. 721, 722

(D.D.C. 1947), rev'd on other grounds, 173 F.2d 416 (D.C.Cir. 1949); Johnson v. United States,

317 F.3d 1331, 1333 (Fed. Cl. 2003) ("A plaintiff bringing a derivative action…must be a

shareholder at the time suit is brought); Issen v. GSC Enterprises, Inc., 538 F. Supp. 745, 752

(N.D. Ill. 1982) ("[A] plaintiff in a derivative suit must be a shareholder both at the time the suit

---

[9] Clark and Mary French have answered the "personal" portion of these claims and intend to move for Summary Judgment promptly upon conducting discovery in this matter.

is filed and at all relevant times during pendency of the litigation.") (dismissing derivative claim); Bernstein v. Somekh, 452 F. Supp. 1373, 1374 (S.D.N.Y. 1978) (same).

Here, Kime's allegations make clear that he has no standing to bring derivative claims on behalf of CIA-DC because he is no longer a shareholder of CIA-DC. Nowhere does Kime allege that he has a continuing right to retain his CIA-DC stock now that he is no longer employed by the corporation. Indeed, Kime admits: (1) that he was an "at-will" employee of CIA-DC; (2) that his employment was terminated; (3) that the Agreement requires him to tender his stock "immediately upon cessation" of Kime's employment "for any reason." Answer at ¶¶ 10, 22; Counterclaim ¶¶ 15, 27, 30. The purpose for the requirement that the derivative plaintiff is and continues to be a shareholder throughout the suit is that the relief is sought on behalf of the corporation and thus any recovery will be the corporation's, the value from which the shareholder would then benefit as a result of his status as a shareholder. See Issen, 538 F. Supp at 752; Wright, Miller & Kane, Federal Practice and Procedure, Civil 2d §1826 ("Since plaintiff's standing to maintain a secondary action depends on the indirect interest that he has in the outcome of the litigation, it also has been held that the ownership requirement continues throughout the suit and that the action will abate if plaintiff ceases to be a shareholder before the termination of the litigation."). Here, Kime's interest in the corporation ceased when his employment terminated and the Agreement required him to "immediately" tender his shares. Agreement at ¶ 6. Thus, Kime has no interest in the continuing viability of the company or in the outcome of these derivative claims. To the extent Counts IV and V assert derivative claims on behalf of CIA-DC, these claims must be dismissed for Kime's lack of standing.[10]

---

[10] Although it is less clear, Count VIII for violation of the D.C. Uniform Trade Secrets Act also appears to be asserted derivatively. To the extent that it is, in addition to the reasons set forth

Second, as to the transfers of assets alleged in Count IV, the only factual allegations regarding transfers of assets between the corporations involve alleged conduct by Clark French. Counterclaim at ¶¶ 39, 40, 41. Thus, this count fails entirely to state a claim against Mary French. In addition, to the extent this claim is based upon alleged transfers that occurred after Kime's termination, such transfers have no bearing on Kime's claims because his rights as a stockholder were extinguished upon his termination, and any purported valuation of the corporation would be determined as of the date of Kime's termination, without considering the effect of subsequent transfers. Counterclaim at ¶ 40, 46.[11] Kime's "derivative" claim as to the transfers (Count IV) thus fails.

**F.    Count VI Fails to State a Claim Against Clark and Mary French for Abuse of Process**

Most egregiously, Kime claims that Clark and Mary French are liable for abuse of process because they allegedly filed the Complaint in the instant action "for the purpose of achieving the extra-judicial aim of forcing Kime to accept Clark D. French's offer to purchase his shares of CIA-DC for a price that is well below their fair market value, which Kime could not otherwise legally or regularly be forced to do." Counterclaim at ¶ 76. This claim fails for two reasons. First, Kime asserts the claim against both Clark and Mary French. Id. Because Mary French was not a party to the Complaint (which forms the basis of Kime's allegations regarding this claim), there is no process that she could have "abused" and she is thus not properly a party to this Count.

---

below in connection with that claim, the derivative portion of Count VIII should be dismissed for the reasons set forth above.

[11]  Moreover, even if the allegations regarding the transfers were true (which they are not), Kime has failed to allege that CIA-DC was injured by these actions. There is no viable cause of action for breach of fiduciary duty when no injury is alleged.

Second, even if Kime's allegations regarding Clark French's "purpose" is true (which it is not), it is well established that a cause of action for abuse of process does not lie in the District of Columbia merely for instituting a lawsuit, no matter what is the alleged "motive." In Harrison v. Howard University, 846 F. Supp. 1, 2-3 (D.D.C. 1993), this Court reviewed the D.C. Court of Appeals' decisions regarding the viability of the tort of abuse of process under D.C. law and concluded that the Harrison plaintiffs' complaint must be dismissed. In so holding, this Court quoted from the D.C. Court of Appeals' decision in Bown v. Hamilton, 601 A.2d 1074 (D.C. 1982), which reaffirmed that court's decision in Morowitz v. Marvel, 423 A.2d 196, 198 (D.C. 1980). These cases make clear that the mere 'issuance' of process is not actionable, no matter what was the plaintiff's "purpose" in filing suit. See Harrison, 846 F. Supp. at 2 ("the Bown court held that the supposedly iniquitous "ulterior motive" was legally of no significance, even if true."). Rather, abuse of process is only actionable when the process is used after it is initiated to "achieve" an end that is "not contemplated in the regular prosecution of the charge." Bown, 601 A.2d at 1080. Here, because Kime has only alleged a wrongful "purpose" and does not allege that the process was actually used to achieve something to which Clark French (or co-Plaintiff CIA-DC) was not otherwise entitled as a result of the process, no action for abuse of process lies. Harrison, 846 F. Supp. at 3 ("If the relief is within the power of the court or agency to grant, and is warranted by the merits, the process has been lawfully employed.").[12] Because, even taking Kime's allegations as true, Clark French's "purpose" in filing the underlying Complaint is irrelevant and because he has not "achieved" a result that is not contemplated or warranted by the law, this cause of action should be dismissed.

---

[12] Moreover, Kime's claim that he could not "legally or regularly" be forced to sell his stock at "well below fair market value" is belied by the plain language of the Agreement, which sets forth no basis or limitation on the "agreed value" at which Kime is obligated to sell his stock.

G.     **Count VII Fails to State a Claim Against Clark and Mary French for Civil Conspiracy**

Kime next asserts that Clark and Mary French are liable for civil conspiracy because they have "combined and conspired" to commit unlawful acts, including breaches of their fiduciary duties. Counterclaim at ¶ 79.   Pursuant to District of Columbia law, the elements of a conspiracy are: "(1) an agreement between two or more persons; (2) to participate in an unlawful act, or in a lawful act in an unlawful manner; and (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement (4) pursuant to, and in furtherance of, the common scheme." Griva v. Davison, 637 A. 2d 830, 848 (D.C. 1994).  Moreover, a "civil conspiracy depends on the performance of some underlying tortious act.  It is thus not an independent action; it is, rather, a means of establishing vicarious liability for the underlying tort." Id.  Thus, pursuant to District of Columbia law, there is no independent tort for a civil conspiracy absent an underlying tort and injury to the plaintiff.

Here, Kime has failed to allege two requisite elements of this cause of action:  that there was an "agreement" or that that Kime suffered an "injury" resulting from the alleged conspiracy. The allegation of conspiracy simply concludes that Clark and Mary French "combined and conspired." Counterclaim at ¶ 79.   There is no specific agreement alleged, nor are there facts alleged from which a conspiracy can be inferred.  Such conclusory allegations do not satisfy the pleading requirements.  See Brady v. Livingood, 360 F. Supp. 2d 94, 104 (D.D.C. 2004) ("A plaintiff must set forth more than just conclusory allegations of an agreement to sustain a claim of conspiracy against a motion to dismiss.").  Moreover, the conspiracy claim states that the acts "intended injure [sic] Kime, and has and will result in unjust enrichment to Clark D. French and Mary E. French." Counterclaim at ¶ 80.  Kime has thus utterly failed to allege that he was actually injured as a result of the alleged conspiracy or any of the torts allegedly committed in

furtherance of the conspiracy. Absent these two essential elements of this cause of action, Count VII fails to state a claim and should be dismissed. See Griva, 637 A.2d at 849 (dismissing claim for conspiracy where plaintiff failed to allege agreement and actual injury).

**H.    Count VIII Fails to State a Claim Against Clark French, Mary French and CIA-MD for Violations of the District of Columbia Uniform Trade Secrets Act**

Kime alleges in his final derivative claim that Clark and Mary French and CIA-MD violated the D.C. Uniform Trade Secrets Act, D.C. Code §§ 36-401-36-410 ("DCUTSA") because Clark French and CIA-MD allegedly asserted rights to the Intelligov software. Counterclaim at ¶¶ 81-86. This claim should be dismissed not only because, as explained more fully above, Kime does not have standing to bring a derivative action on behalf of CIA-DC, but also because the Complaint fails to allege the requisite elements of this cause of action. Indeed, Kime's own allegations contradict that Intelligov is a trade secret or that CIA-MD (or any other Counter-Defendant) misappropriated the software. The elements of misappropriation of trade secrets are: "(1) existence of a trade secret; (2) acquisition of the trade secret as a result of a confidential relationship; and (3) unauthorized use [or disclosure] of the secret resulting in loss or damages." Catalyst & Chemical Services, Inc. v. Global Ground Support, 350 F. Supp. 2d 1, 8 (D.D.C. 2004).

An essential element to the existence of a trade secret is that the information sought to be protected is subject to measures to retain its secrecy and confidentiality. See Catalyst, 350 F. Supp. 2d at 8-9. Here, Kime does not allege (nor could he) that the source code for the software known as Intelligov is subject to a confidentiality agreement or other measures to protect its secrecy from French or CIA-MD. Kime has thus failed to alleged the "existence of a trade secret" as required by the DCUTSA, or that the Counter-Defendants acquired the information as

a result of a confidential relationship. Indeed, the Counterclaim asserts that the Intelligov software was designed by personnel from both CIA-DC and CIA-MD, which contradicts that the information for which Kime seeks protection belonged solely to CIA-DC. Counterclaim at ¶ 43. See also Physiotherapy Associates, Inc. v. White, Slip Copy 2006 WL 545542 *6-8 (N.D. Ind. March 6, 2006) (dismissing claim under Indiana version of Uniform Trade Secrets Act because former employee's knowledge of patient list was not trade secret because knowledge was acquired simply as a result of working directly with the patients and thus the employees had not obtained the information by improper means).

The Counterclaim alleges that Clark French has asserted that Intelligov belongs to CIA-MD, and that Clark and Mary French "have failed to take reasonable steps to protect CIA-DC's interest in Intelligov for the purpose, in part, of diverting an opportunity to obtain investment capital to develop the Intelligov software from CIA-DC to CIA-MD…." Counterclaim at ¶¶ 44-45. In addition, Kime alleges that "CIA-MD obtained this trade secret under circumstances giving rise to a duty to maintain its secrecy and limit its use and with knowledge that it was obtained in violation of Clark D. French's and Mary E. French's breach of duty, but has nevertheless misappropriated it and is exploiting its commercial value for itself in violation of the District of Columbia Uniform Trade Secrets Act, D.C. Code §§ 36-401-410." Counterclaim at ¶85. These allegations do not assert that CIA-MD or any other Counter-Defendant disclosed the source code for the Intelligov software to any other party, or that CIA-MD was injured by an alleged misappropriation. Because the allegations that Kime makes to support this claim do not satisfy the elements of a violation of the DCUTSA, this claim should be dismissed. See Catalyst, 350 F. Supp. 2d. at 8.

I.    **Count IX Fails to State a Claim Against Clark and Mary French
for Violation of the District of Columbia Wage Payment
and Collection Law**

Kime's last claim asserts that Mary and Clark French are somehow personally liable for

violations of the D.C. Wage Payment and Collection Law (the "Act") because they are Kime's

"employers" and, because Kime was not paid what he claims was his agreed-upon salary from

CIA-DC, Clark and Mary French should pay his unpaid salary as provided in the Act.

Counterclaim at ¶¶ 87-92. Kime's contentions fail for several reasons. First, Mary and Clark

French, in their individual capacities, did not "employ" Kime as set forth in the Act. The Act

defines an employer as an "individual...corporation employing any person in the District of

Columbia…." D.C. Code § 32-1301(1). Kime readily admits in his Counterclaim that he was

employed by CIA-DC (not the Frenches in their individual capacities), that he was paid by CIA-

DC, and that he rendered services "as an employee of CIA-DC." Counterclaim at ¶¶ 23, 89.

Mary and Clark French are thus not personally liable for payment of Kime's allegedly withheld

wages because CIA-DC was Kime's employer, not the Frenchs. This claim is thus subject to

dismissal.

Second, according to Kime's own allegations, he was not an "employee" as defined in the

Act. D.C. Code §32-1301(2) exempts from the definition of an employee "any person employed

in a bona fide executive… capacity." Kime alleges that he was "Chief Executive Officer" of

CIA-DC and denies that he was "an 'employee' within the meaning of [CIA-DC's expense

reimbursement] policy." Answer at ¶13, 16, 41. Kime cannot have it both ways. He cannot

claim that he was an executive (not an employee) and thus exempt from personnel policies, and

at the same time seek remedies under an act that only covers employees (and not executives),

which he claims he is not in other sections of his Counterclaim. The law does not contemplate

such a result. Taking Kime's allegations as true, as Chief Executive Officer of CIA-DC, Kime is exempt from the Act.[13]

## II.    Kime's Allegations Containing Settlement Discussions Should be Stricken

Kime's counterclaim contains allegations setting forth the substance of settlement discussions that were conducted after a dispute arose between French (or CIA-DC) and Kime as to the amount that Kime should be paid for his stock upon Kime's termination. Counterclaim at ¶¶28, 30 (second sentence only), 31-33, 35. Such statements are inadmissible under the Federal Rules of Evidence and, as explained below, are properly stricken as immaterial and impertinent under Fed. R. Civ. P. 12(f), which provides as follows:

> Upon motion made by a party before a responding to a pleading…or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.

Pursuant to Fed. R. Evid. 408, an offer "to compromise a claim which was disputed as to either validity or amount is not admissible to prove liability for or invalidity of the claim or its amount." (emphasis added); see also Beckman v. Farmer, 579 A.2d 618, 647-648 (D.C. 1990) (holding that trial court erred in admitting letter setting forth settlement discussions and that such admission would be improper under Fed. R. Evid. 408).

The United States Court of Appeals for the Second Circuit has held that striking matters within a complaint (or counterclaim) is proper if it is shown that "no evidence in support of the

---

[13] In addition, even if Kime had asserted a breach of contract claim against CIA-DC, Kime's claim would still fail on summary judgment. The evidence will reveal that Kime and French agreed that CIA-DC would only pay French and Kime a salary when the corporation was doing well, and there were several months during which neither Kime nor French were paid pursuant to this agreement. Kime was paid all that he was due according to his agreement with French as CIA-DC's president. Thus, as a matter of contract law, there could be no breach.

allegation would be admissible." <u>Lipsky v. Commonwealth United Corp.</u>, 551 F.2d 887, 893 (F.2d 1976) (holding that references in complaint to SEC opinion that would be inadmissible under the Federal Rules of Evidence were properly stricken from complaint); <u>see</u> <u>also</u> <u>Cook v. Boortstin</u>, 1987 WL 25446 (D.D.C. 1987) (granting motion to strike document attached to court submission that had been tendered in settlement discussions because it is inadmissible under the Federal Rules of Evidence).

Here, Kime's "settlement" allegations are obviously included in his Counterclaim in an effort to support his claim that he should be paid more than $600 in exchange for his stock. Because the communications set forth in paragraphs 28, 30 (second sentence only), 31-33 and 35 constitute offers to "compromise" the disputed amount of this claim (and thus any evidence to support these allegations would be inadmissible under Fed. R. Evid. 408), these allegations should be stricken.

<u>**Conclusion**</u>

For the reasons set forth above, the allegations contained in Counts I-III and VI-IX of the Counterclaim and the derivative portions of Counts IV and V of the Counterclaim fail to state a claim and should thus be dismissed and the allegations contained in paragraphs 28 and 30-33 of the Counterclaim should be stricken.

Dated:  April 24, 2006

Respectfully submitted,

SHULMAN, ROGERS, GANDAL,
 PORDY & ECKER, P.A.


_____/s/_____
Ross D. Cooper #429200
11921 Rockville Pike, Third Floor
Rockville, MD 20852
(301) 230-5200
(301) 230-2891 (facsimile)

Attorneys for Plaintiffs/Counter-Defendants
Clark French and Computer Intelligence
Associates, Inc. D.C. and Counter-
Defendants Mary French and Computer
Intelligence Associates, Inc. MD